**IN RE: RIVER CANYON REAL ESTATE INVESTMENTS, LLC, Debtor.**

**Bankruptcy Case No. 12–20763 EEB**

United States Bankruptcy Court, D. Colorado

July 29, 2013

Daniel J. Morse, Cheyenne, WY, for US Trustee.

David Warner, David Wadsworth, Katherine M. Swan, Harvey Sender, Denver, CO, Kim J. Seter, Greenwood Village, CO, for Debtor.

Chapter 11

## ORDER INVALIDATING UNITED'S § 1111(b) ELECTION

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on the Debtor's Objection to the Section

1111(b) Election, filed by United Water & Sanitation District ("United"). At issue is whether only one member of a two-member class of secured creditors, with liens of equal priority on the same collateral, may validly make an election.

## I. BACKGROUND

The Debtor is the developer of property known as Ravenna and the Golf Club at Ravenna, located in the southwest Denver metropolitan area, which includes a gated community with 243 home sites situated on 143.9 acres and an 18–hole championship Jay Morrish signature golf course, with 5 acres set aside for clubhouse and recreation facilities. Ravenna Metropolitan District ("RMD") is the special district formed by the Debtor to finance and construct the water and sanitation infrastructure for Ravenna pursuant to Colo.Rev. Stat. § 32–1–101, et seq. United is another special district that assists special districts within the state of Colorado with obtaining the necessary financing for the cost of infrastructure.

United worked in conjunction with RMD to issue four series of bonds to finance the infrastructure. In order to repay the bonds, they passed "fee resolutions," imposing fees for the cost of the infrastructure on the property owners of Ravenna. These fees include water tap fees, facility acquisition fees, and water resource fees (the "Fees"). In addition, RMD also imposed sewer and operations fees (the "Additional Fees").

RMD filed an amended proof of claim for $10,722,290.63, which includes both the Fees and the Additional Fees owed on lots owned by Debtor. RMD contends that it holds a statutory perpetual lien against Debtor's lots until its fees are paid, pursuant to Colo.Rev.Stat. § 32–1–1001(j)(I). There is no pending claim objection to RMD's claim.

United has also filed a secured proof of claim in the amount of $10,254,880.61 for unpaid Fees. The Debtor, however, initiated a Douglas County state court action to challenge United's lien and claim. Among other things, Debtor contends that United lacked authority under state law to place a lien on Ravenna's lots, which are outside of United's own territorial district. Resolution of the state court action will turn primarily on interpretation of the state law powers granted to special districts. The state court has not yet issued its ruling, but this Court recognizes the possibility that United may ultimately be found to have no lien against the Debtor's property, thus mooting the § 1111(b) issue. Since this case must proceed forward with confirmation without awaiting the state court's ruling, the Debtor's plan of reorganization has included escrow provisions for United's claim until a final ruling is issued. For the purposes of this Order, the Court assumes, without deciding, that United has a valid claim and lien.

The Court has already ruled in this case that the bulk value of the Debtor's real property for purposes of confirmation is $9.9 million. Although it rendered its ruling on a bulk value basis, it ascribed a portion of the bulk value to each of the Debtor's lots for purposes of a possible § 1111(b) election. The election had to be made on a lot-by-lot basis for three reasons. First, United does not have a blanket lien on the development. It only holds its lien, if at all, on a lot-by-lot basis. Second, there are tax liens on the lots senior to RMD's and United's liens. The Debtor has asserted that, as to some of these lots, the amount of equity remaining after the tax liens is either nonexistent or of inconsequential value. If so, then any election made as to these particular lots would be invalid pursuant to § 1111(b)(1)(B)(i). Third, as to 36 of the

lots, the parties agree that the Debtor has already paid the water tap fee. Without a tap fee owed, and depending on the individual value ascribed to these lots, there might be sufficient equity remaining after the tax liens to render United's and RMD's liens for other fees fully secured, obviating the need to make an election as to these lots. For these reasons, the Court issued its valuation ruling on a lot-by-lot basis, and United filed its election on a lot-by-lot basis.

United made a § 1111(b) election with respect to 130 of the 166 lots. RMD did not file a timely election as to any lots, and the time for it to have done so is now passed. Debtor filed an objection to United's election on several grounds.

## II. DISCUSSION

■ Section 1111(b) determines the treatment of partially secured claims secured by liens on property of the estate in chapter 11 cases. Assuming the debtor is retaining the secured property post-confirmation, § 1111(b) gives each class of secured creditors—whether the claims held were originally recourse or nonrecourse—two choices. First, the class of secured creditors may do nothing, in which case their allowed claims will be treated as recourse claims and bifurcated into secured and unsecured portions by operation of § 506(a). Second, the class of secured creditors, subject to certain limitations, may make the § 1111(b) election and, if so, the entire amount of the allowed claims of that class will be treated as fully secured, rather than bifurcated under § 506(a).[1] A secured creditor class that makes the § 1111(b) election waives its right to any

unsecured deficiency claims that would otherwise arise under § 506(a).

■ By its terms, § 1111(b) requires an election to be made by a "class" of secured creditors. Specifically, the section provides that:

A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—

(i) the *class* of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection....

11 U.S.C. § 1111(b)(1)(A)(i) (emphasis added). Subparagraph 2 is the provision that suspends the operation of § 506(a) that would otherwise bifurcate the claims into secured and unsecured portions. If the election is made by the majorities required by this subsection, it is "binding on all members of the class with respect to the plan." Fed. R. Bankr.P. 3014.

Although § 1111(b) requires a "class" election, in most chapter 11 cases the election is made by a single secured creditor because most plans classify each secured creditor separately in its own class. Separate classification is usually warranted because typically the secured creditors either have liens on different property or they possess liens of different priority as to the same property. In fact, "many courts have concluded that secured creditors may not be classified together when they have liens in different property, or possess liens of different priority in the same property,

---

1. Although the claims of an electing class are treated as secured, "the creditor is entitled only to receive payments over time equal to the total allowed claim, the present value of which (as of the plan effective date) must equal only the secured portion of the claim, i.e., the value on the plan effective date of the secured creditor's collateral." 5 William L. Norton, Jr., *Norton Bankr.L. & Prac.* § 102:1 (3d ed. 2008).

since their respective legal rights are not substantially similar." *In re Richard Buick, Inc.*, 126 B.R. 840, 853 (Bankr. E.D.Pa.1991).

In this case, it was proper to classify both RMD and United in the same class. If United's claim and lien are valid, then both RMD and United possess a lien on the same property and their liens have equal priority under Colo.Rev.Stat. § 32–1–1001(j)(I). Accordingly, the Debtor's plan of reorganization classified their claims together under Class 5 (for lots with unpaid tap fees) and Class 6 (for paid tap fee lots). No party, including United, objected to the Debtor's classification of claims in the plan.

Thus, in order for United's election to stand, it must demonstrate that the class in which its claim is placed—lass 5[2]—made the election by at least two-thirds in amount and more than half in number of the allowed claims of that class. 11 U.S.C. § 1111(b)(1)(A)(i). The claims of United and RMD for the Fees are admittedly duplicative. It is possible that United's claim for the Fees will stand and a portion of RMD's will be disallowed as duplicative. *See In re Pierport Dev. & Realty*, 491 B.R. 544, 547 (Bankr.N.D.Ill.2013) ("A claim that seeks duplicate recovery for the same debt is partially unenforceable to the extent of the duplication."). Even if RMD's claim for the Fees is disallowed, RMD will still hold a secured claim for the Additional Fees, which makes it impossible for United to satisfy the majorities requirement of § 1111(b)(1)(A)(i). This subsection requires not only "two-thirds in amount" of the claims, but "more than half in number

of allowed claims of such class." Since RMD did not make an election, only half of the claims in Class 5 made the election, rather than "more than half." Therefore, the requirements of § 1111(b)(1)(A)(i) are not met, and United's § 1111(b) election is invalid.

United makes several arguments as to why its election should stand notwithstanding the requirements of § 1111(b)(1)(A)(i). First, it argues the "class" election called for in the statute does not apply because the Court allegedly ordered United to make its election on a lot-by-lot basis, instead of a class basis. This argument mischaracterizes the Court's order. Following the valuation hearing, the Court issued a minute order which required United to "file its § 1111(b) election in writing on a lot by lot basis. . . ." March 19, 2013 Minute Order. This requirement reflected the fact that United did not have a blanket lien on the development as a whole and, therefore, it could only assert its liens lot by lot. The mechanics of United's election, however, cannot change the fact that it is only one member of Class 5 under Debtor's Plan, and that § 1111(b)(1)(A)(I) requires the election to be made by a "class" of secured creditors. Nothing in the Court's minute order purported to eliminate the class voting requirement, nor could it as the Court is not authorized to rewrite the Code.

United next argues that it has met the "more than half in number" requirement because RMD's claim is "wholly duplicative" and because United allegedly "controls" collection of the Fees.[3] As explained

---

**2.** The bulk of its election is made as to its Class 5 claim. United also made an election as to two lots, placed by the Debtor in Class 6, but as to which United claims tap fees remain unpaid. Regardless of whether the two disputed lots are included in Class 5 or Class 6, the legal issues remain the same. RMD did

not make the election as to either Class 5 or Class 6.

**3.** United also attempts to characterize each of the three types of Fees it is allegedly owed (i.e. water tap fee, water resource fee, facility acquisition fee) as a separate "claim," so that

above, however, RMD's claim is not wholly duplicative of United's claim. RMD also seeks to recover the Additional Fees, which is not a part of United's claim. Thus, even assuming that United holds the claim for the Fees, there are still two, non-duplicative claims in Class 5. United's citation to various documents allegedly showing its right to "control" collection of the Fees does not change this conclusion. The cited provisions relate only to the Fees, specifically water tap fees and water resource fees. *See* United's Response at ¶ 6, 16. Nothing cited by United demonstrates it has the right to control collection of the Additional Fees.

 Finally, United argues it would be inequitable to invalidate its § 1111(b) election on the basis of RMD's non-election because RMD is controlled by insiders of the Debtor. The Debtor's principal, Mr. Jacks, has a seat on RMD's board. Since this bankruptcy proceeding, he has recused himself from voting on any matters that affect this case. But even if United had established that Mr. Jacks controlled RMD, United presented no evidence to suggest RMD's claim for the Additional Fees was somehow illegitimate or trumped up, or that RMD's claims should be subordinated for any reason. United has never argued that its claim should not be classified with RMD's claim. Nor has United provided any authority for the Court to use its equitable powers to permit United to make a non-class election in violation of the clear requirements of

§ 1111(b)(1)(A)(i). Section 105 powers may not be used to violate express provisions of the Bankruptcy Code.

## III. CONCLUSION

For the reasons stated above, United's purported § 1111(b) election is invalid because it was not made in accordance with § 1111(b)(1)(A)(i).[4] As such, United's claim, if allowed, may be treated as if no election was made under § 1111(b)(2).

it may then argue it controls three "claims" in Class 5 as compared to RMD's two "claims" for Additional Fees. The Court disagrees with this characterization of United's claim. United filed *one* proof of claim for its alleged secured claim, not three. The Debtor's Plan classified United's *one* claim into Class 5, along with RMD's one claim. United did not object to this classification. United also cast one vote against confirmation of Debtor's Plan for its Class 5 claim (as well as votes for its Class 6 and Class 9 claims). It did not cast three votes for three alleged claims in Class 5. United cannot contrive additional "claims" to meet the "more than half in number" requirement of § 1111(b)(1)(A)(i).

4. Given this ruling, the Court need not address the Debtor's other grounds for invalidating United's election.